# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>TOD JAMES RODOLPH,<br><br>    Defendant. | Case No. 3:16-cr-00048-SLG-1 |

## ORDER REGARDING MOTION FOR COMPASSIONATE RELEASE

Before the Court at Docket 149 is Defendant Tod Rodolph's *pro se* "Motion for Compassionate Release or, in the Alternative, for a Reduction in Sentence Under 18 U.S.C. § 3582." The Court appointed counsel to assist Mr. Rodolph with his motion, and at Docket 193, counsel for Mr. Rodolph filed an Amended Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i). The Government responded in opposition at Docket 199. Mr. Rodolph filed a reply at Docket 209. The U.S. Probation Office for the District of Alaska filed a sealed Amended Compassionate Release Investigation Report at Docket 201.

In April 2017, this Court sentenced Mr. Rodolph to 144 months imprisonment after he pleaded guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, and one count of Possession of

Firearms in Furtherance of a Drug Trafficking Crime.[1] Mr. Rodolph is currently in Bureau of Prisons (BOP) custody and incarcerated at Devens FMC; his projected release date is September 4, 2026.[2] Mr. Rodolph seeks an order reducing his sentence to time served or, in the alternative, a reduction to his sentence.[3] For the reasons below, the Court denies Mr. Rodolph's motion without prejudice to refiling.

I. **Applicable law**

The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow federal inmates to move the district court for a sentence reduction after exhausting their administrative rights.[4] If an inmate has exhausted his administrative rights, a district court must consider the motion on the merits. On the merits, a court must find that "extraordinary and compelling reasons warrant" a sentence reduction *and* that the applicable factors set forth in 18 U.S.C. § 3553(a) support a sentence reduction.[5] Although a district court must make both findings "before it *grants* compassionate release, a district court that properly *denies* compassionate

---

[1] Docket 103 (Am. Judgment).

[2] Fed. Bureau of Prisons, Inmate Locator (available at www.bop.gov/inmateloc/) (last accessed May 2, 2023).

[3] Docket 193 at 1; Docket 149 at 1.

[4] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to this amendment, only the Director of the Bureau of Prisons could bring a motion to reduce an inmate's sentence.

[5] 18 U.S.C. § 3582(c).

Case No. 3:16-cr-00048-SLG-1, *United States v. Rodolph*
Order Re Motion for Compassionate Release
Page 2 of 8
Case 3:16-cr-00048-SLG   Document 223   Filed 05/15/23   Page 2 of 8

release need not evaluate each step."[6] The Sentencing Commission's policy statement at U.S.S.G. § 1B1.13 is not binding on a district court considering a compassionate release motion filed by a defendant, but that policy statement "may inform a district court's discretion."[7]

## II. Exhaustion of administrative rights

An inmate has exhausted his administrative rights if the warden of the inmate's facility has denied the inmate's request for compassionate release or if 30 days have lapsed from the warden's receipt of the request for compassionate release.[8] Mr. Rodolph submitted a request for compassionate release to the warden on July 15, 2020.[9] The warden denied the request on August 20, 2020.[10] Mr. Rodolph has exhausted his administrative rights, and the Court will consider the motion on its merits.

## III. Extraordinary and compelling reasons

Mr. Rodolph, who is currently 47 years old, submits that he faces "a number of medical issues . . . , most significantly, his end-stage kidney failure" that is

---

[6] *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (emphasis in original) (disagreeing with the defendant that a district court must make an explicit "extraordinary and compelling" finding before denying a motion based on the § 3553(a) factors).

[7] *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021).

[8] 18 U.S.C. § 3582(c)(1)(A).

[9] Docket 149-2.

[10] Docket 193-5 at 1.

Case No. 3:16-cr-00048-SLG-1, *United States v. Rodolph*
Order Re Motion for Compassionate Release
Page 3 of 8
Case 3:16-cr-00048-SLG   Document 223   Filed 05/15/23   Page 3 of 8

"irreversible, terminal, and 'is expected to drastically lower his life expectancy.'"[11] Mr. Rodolph asserts that these are extraordinary and compelling reasons that warrant his early release from custody.[12]

The Court has reviewed more than 190 pages of Mr. Rodolph's medical records.[13] Those records confirm that Mr. Rodolph has had a history of various medical issues, such as end-stage renal disease, hypertension, esophagitis, chronic neuropathy of the right forearm, normocytic anemia, hepatitis C, and thrombocytopenia.[14] Mr. Rodolph's experts have stated that his end-stage renal disease is "irreversible" and that "he requires regular dialysis for survival."[15] His experts assert that Mr. Rodolph's average life expectancy is under five years from the time he starts dialysis, and because he began dialysis in 2017—about five years ago—"he may only have a short time left alive."[16] Over the last seven months, Mr. Rodolph has tapered off his dialysis sessions due to alleged cramping,

---

[11] Docket 193 at 1-2 (quoting Docket 193-1 at 3).

[12] Docket 193 at 2.

[13] Docket 194-1 (under seal); Docket 194-2 (under seal); Docket 200-2 (under seal); Docket 200-3 (under seal).

[14] *See, e.g.*, Docket 194-1 at 2, 11, 13, 17, 20, 23, 81-82.

[15] Docket 193-1 at 3.

[16] Docket 193-1 at 3.

Case No. 3:16-cr-00048-SLG-1, *United States v. Rodolph*
Order Re Motion for Compassionate Release
Page 4 of 8
Case 3:16-cr-00048-SLG   Document 223   Filed 05/15/23   Page 4 of 8

dizziness, and headaches.[17] While "[d]ialysis can preserve life," it can "also cause[] muscle spasms and significant pain in some individuals."[18]

Pursuant to the Sentencing Guidelines, a defendant "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)," such as "end-stage organ disease," could meet the threshold showing of "extraordinary and compelling reasons" to warrant a sentence reduction.[19] Given Mr. Rodolph's end-stage renal disease and his shortened lifespan, Mr. Rodolph falls squarely into this category. While the Government appears to oppose Mr. Rodolph's request for compassionate release based on the COVID-19 pandemic's effect on prisoners and Mr. Rodolph's vaccinated status, the Court notes that it is Mr. Rodolph's end-stage renal disease that forms the basis of his request, not his susceptibility to COVID-19 based on his disease.[20]

Mr. Rodolph has demonstrated that he is suffering from a terminal illness and has an unknown but likely short time left to live. The Court thus finds that Mr. Rodolph's medical condition constitutes extraordinary and compelling reason for his early release.

---

[17] Docket 201 at 3 (under seal); Docket 209 at 4; Docket 200-3 at 15.

[18] Docket 209-1 at 1.

[19] *See* U.S.S.G. § 1B1.13, n.1(A)(i). While the Sentencing Commission's policy statement on what constitutes "extraordinary and compelling reasons" is not binding on this Court, the Court nevertheless finds it informative. *See Aruda*, 993 F.3d at 802.

[20] *See* Docket 199 at 4-9. The Court also notes that, "[g]iven his kidney failure, Mr. Rodolph is at high risk of serious illness and death from COVID-19 . . . regardless of vaccination status." Docket 193-1 at 3.

Case No. 3:16-cr-00048-SLG-1, *United States v. Rodolph*
Order Re Motion for Compassionate Release
Page 5 of 8
Case 3:16-cr-00048-SLG   Document 223   Filed 05/15/23   Page 5 of 8

## IV. Section 3553(a) factors

In considering a motion for compassionate release, the § 3553(a) factors are a lens through which the Court views the continued validity of the imposed sentence. Mr. Rodolph asserts that he "has already served nearly six years in federal prison for [his] offenses," that he "has taken great strides while in custody to overcome [his] addiction," and that "he has no history of violence" and has been classified by the BOP "as a non-violent offender with a low recidivism PATTERN score."[21] Mr. Rodolph emphasizes that his circumstances have changed since the commission of his drug and firearm offense; he asserts that he is "[n]ow sober and fighting a terminal illness," and that his primary goal upon release is to reconnect with his daughter and his family in the time he has left.[22]

The Government maintains that, based on Mr. Rodolph's prior drug-dealing offense, his tolerance of his teenage daughter's methamphetamine use, and his failure to act when one of her friends overdosed, his release would "present[] an undue risk to the community" and endanger the public.[23] The Probation Officer who completed the Compassionate Release Investigation in this case also recommended denying Mr. Rodolph's request for a reduction in sentence because he "is assessed as a danger to the community based on his criminal history, and

---

[21] Docket 193 at 6-7; Docket 149 at 27-28; Docket 149-1 at 1-3.

[22] Docket 209 at 5.

[23] Docket 199 at 10.

Case No. 3:16-cr-00048-SLG-1, *United States v. Rodolph*
Order Re Motion for Compassionate Release
Page 6 of 8
Case 3:16-cr-00048-SLG   Document 223   Filed 05/15/23   Page 6 of 8

the defendant's conduct in the underlying offense."[24] At sentencing, Mr. Rodolph had a criminal history level of II. Mr. Rodolph's criminal history includes driving offenses, malicious destruction of property and theft, and two drug convictions for which he eventually served six months in 2008 after probation violations.[25] The Probation Officer further notes that Mr. Rodolph "had two incident reports in custody," both involving the possession of drugs, has "no specific release plan proposed," and did not "mention a medical treatment plan . . . if he is released."[26]

Mr. Rodolph's medical situation is very serious, but he has not provided information to the Court about his release plan. Thus, the current record does not persuade the Court that a reduction to Mr. Rodolph's sentence would meet the § 3553 factors and particularly the need to protect the public.[27] Without a release plan, the Court cannot conclude that Mr. Rodolph is not a danger to the safety of others or to the community at this time.[28] Therefore, having considered the applicable § 3553(a) factors, the Court finds that a reduction of Mr. Rodolph's sentence is not warranted on this record.

---

[24] Docket 201 at 3.

[25] Docket 82 at 12-15.

[26] Docket 201 at 2-3.

[27] 18 U.S.C. § 3553(a)(1)-(2).

[28] The policy statement of the Sentencing Commission for a reduction in sentence under § 3582(c)(1)(A) requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). While this policy statement is not binding on this Court in this case, the Court nevertheless considers it. *See Aruda*, 993 F.3d at 802; 18 U.S.C. § 3553(a)(5).

Case No. 3:16-cr-00048-SLG-1, *United States v. Rodolph*
Order Re Motion for Compassionate Release
Page 7 of 8

## CONCLUSION

In light of the foregoing, IT IS ORDERED that Defendant's motions at Docket 149 and Docket 193 are DENIED without prejudice to refiling with a release plan.

DATED this 15th day of May, 2023, at Anchorage, Alaska.

*/s/Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE
